U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

*Barbara J. Houser*

**United States Bankruptcy Judge**

**Signed April 18, 2011**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| THE HERITAGE ORGANIZATION, | § | CASE NO. 04-35574-BJH-11 |
| L.L.C., | § | |
| | § | |
| Debtor. | § | |
| | § | |
| DENNIS FAULKNER, TRUSTEE, | § | |
| Plaintiff, | § | ADV. PRO. NO. 10-3357-BJH |
| | § | |
| - against - | § | |
| | § | |
| EAGLE VIEW CAPITAL | § | |
| MANAGEMENT, et al., | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION</u>

Before the Court is a motion to dismiss (the "Motion") the complaint in this adversary

proceeding pursuant to Fed. R. Bankr. P. 7012.  The Motion is filed by Gary M. Kornman, Eagle

View Capital Management, LLC, Financial Marketing Services, Inc., 618 BR, LLC, TL Marketing,

LLC, Valiant Investments 94-1, LP, Valiant Investments 94-3, LP, Valiant Investments 94-5, LP, Valiant Investments 94-6, LP, Valiant Investments 95-4, LP, Valiant Investments 95-5, LP, Intrepid Investments II, LP, The Oak Group, LP, GMK 2002 Friends and Family Trust, Kornman Corporation, Steadfast Investments, LP, Kornman & Associates, Inc., DPK Investments, LP, Life Underwriters of America, Inc., Dorothy P. Kornman – GMK PAS Trust, 814G, LLC, 2002 DPK Descendants Trust I, Ettman Family Trust I, Flagstone Management, LLC, and Treasured Investment, LP (together, the "Kornman Defendants").  This adversary proceeding, filed by Dennis Faulkner ("Faulkner") as Trustee of the Heritage Creditors Trust (the "Trustee") is the latest lawsuit arising out of the bankruptcy proceeding of The Heritage Organization, LLC ("Heritage").  The Trustee was appointed pursuant to Heritage's plan of reorganization (the "Plan").  The Plan was confirmed by order entered on September 12, 2007.  *See* Docket No. 1281 in Case No. 04-35574-BJH-11.  Pursuant to the Plan, a creditors' trust was created (the "Plan Trust") and various assets, including causes of action asserted in Adversary Proceeding 06-3377-BJH (the "First Adversary Proceeding"), were transferred to the Plan Trust.  *See* Docket No. 1201 in Case No. 04-35574-BJH-11, Art. 1.17, 1.29 and 6.1.  Similarly, the claims of various creditors were also transferred to the Plan Trust, and those creditors are to be the beneficiaries of the proceeds of the First Adversary Proceeding.

I.      FACTUAL AND PROCEDURAL BACKGROUND

The First Adversary Proceeding was filed on May 16, 2006, prior to confirmation of the Plan, by Faulkner in his capacity as the chapter 11 Trustee of the Heritage estate.  Trial of the First Adversary Proceeding occurred in January of 2009, post-confirmation.  After the filing of post-trial proposed findings of fact and conclusions of law, post-trial briefs and this Court's issuance of its

Memorandum Opinion on May 11, 2009, the Court entered judgment on July 13, 2009 (the "Judgment") against thirteen defendants – namely, Gary M. Kornman, Steadfast Investments, L.P., GMK Family Holdings, L.L.C., Tikchik Investment Partnership, L.P., Ettman Family Trust I, Strategic Leasing, L.P., Valiant Leasing, L.L.C., Executive Aircraft Management, L.L.C., Executive Air Crews, L.L.C., Vehicle Leasing, L.L.C., The Heritage Organization Agency, Inc., Heritage Properties, L.L.C., and Financial Marketing Services, Inc. (collectively, the "Judgment Debtors"). The Judgment avoided, pursuant to 11 U.S.C. §§ 544, 547 and 550, certain transfers found to be fraudulent and/or preferential. The Judgment further found the Judgment Debtors liable for the value of the property transferred, and awarded the Trustee a money judgment against each of the Judgment Debtors in various amounts, aggregating over $45 million. The Judgment further entitled the Trustee to "writs of execution and all other legal process to enforce this Final Judgment permitted by Federal Rule of Bankruptcy Procedure 7069, Federal Rule of Civil Procedure 69, and other applicable law." *See* Judgment, Docket No. 608 in the First Adversary Proceeding. A motion by the Judgment Debtors for a new trial was denied. Although the Judgment Debtors initially filed a notice of appeal, that appeal was subsequently dismissed. The Judgment is now final. Writs of execution issued from this Court on October 16, 2009 but to date, the Trustee's collection efforts have proven unsuccessful.

On March 9, 2010, the Trustee registered the Judgment in the United States Bankruptcy Court for the Southern District of Texas, which commenced Miscellaneous Proceeding No. 10-MP-0301, and began collection efforts there.[1] Specifically, the Trustee filed applications for post-

---

[1] There is no provision in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure for a "miscellaneous proceeding." Rather, a miscellaneous proceeding is an administrative procedure that is used by a clerk of a bankruptcy court as a vehicle for filing or indexing any paper not associated with a case or proceeding for which a filing fee has been paid, including registering a judgment from another district. The effect of opening a miscellaneous proceeding is that it allows the clerk's office to assign a case number to track the progress of the paper. *See* Bankruptcy Clerk's Manual, Sec. 20, available at

judgment writs of garnishment and an application for a turnover order. In addition, within that miscellaneous proceeding, the Trustee filed a document entitled "Complaint."[2] *See* Docket No. 72 in Misc. Pro. No. 10-MP-0301. The Complaint is asserted against 32 named defendants and 100 "John Does." For present purposes, suffice it to say that the Complaint alleges that the recipients of the transfers avoided by the Judgment made subsequent transfers to other individuals and/or entities which are recoverable on several theories. Attached to the Complaint is what the Complaint alleges is a partial list of the alleged subsequent transfers.

Perhaps because there is no mechanism for filing an adversary proceeding complaint within the context of a miscellaneous proceeding, *see* n. 1, *supra*, the Trustee moved in the Bankruptcy Court for the Southern District of Texas to sever the Complaint from the miscellaneous proceeding and to have a separate adversary proceeding commenced. *See* Docket No. 83 in Misc. Pro. No. 01-MP-0301. The defendants opposed that motion and argued that the Southern District of Texas was an improper venue. Bankruptcy Judge Marvin Isgur ordered the Trustee to file a response to that argument, and include an explanation "as to why the . . . Complaint should not be transferred to the United States District Court for the Northern District of Texas." *See* Docket No. 203 in Misc. Pro. No. 10-MP-0301. Unpersuaded by the Trustee's briefing in response to this order, Judge Isgur entered an order severing the Complaint and transferring it to the United States District Court for the Northern District of Texas. *See* Docket No. 219 in Misc. Pro. No. 10-MP-0301. Upon receipt of the Complaint, the United States District Court for the Northern District of Texas entered an order

---

http://jnet.ao.dcn/Bankruptcy/Bankruptcy_Clerks_Manual/Section_20.htm.

[2] For some unexplained reason, the Complaint appears on the docket with the title "Third Party Complaint," although the document is entitled "Complaint."

referring the Complaint to this Court on October 29, 2010. The Complaint commenced Adversary

Proceeding No. 10-3357 (the "Second Adversary Proceeding"), which was assigned to the

undersigned, who presided over the Heritage bankruptcy case and the trial of the First Adversary

Proceeding.

### A. The Allegations of the Complaint

The Complaint alleges that it is brought under 11 U.S.C. § 550, 28 U.S.C. §§ 1963 and 2201,

Federal Rule of Civil Procedure 69 and Federal Rule of Bankruptcy Procedure 7069. The Complaint

further alleges that the bankruptcy court has jurisdiction over the action pursuant to 28 U.S.C. §§

157, 1331, 1334, 1963 and 2201.

The Complaint recites the existence of the Judgment and its finality. The only facts alleged

as giving rise to the defendants' liability are as follows:

> Upon information and belief, the recipients of the fraudulent and/or preferential
> transfers avoided pursuant to the Final Judgment made transfers to mediate or
> immediate transferees under circumstances which make the value of such transfers
> to Defendants herein as mediate or immediate transferees recoverable by the Trustee
> from such mediate and immediate transferees under Section 550 of the United States
> Bankruptcy Code.

> Upon information and belief, the recipients of the fraudulent and/or preferential
> transfers avoided pursuant to the Final Judgment made subsequent transfers to
> Defendants herein under circumstances which make the value of such subsequent
> transfers recoverable against such Defendants pursuant to Texas Business &
> Commerce Code §§ 24.005, 24.008, 24.009, similar statutes of other states and
> jurisdictions whose law may apply, and other applicable principles of law and equity.

Compl., ¶¶ 11, 12.

### B. The Parties' Arguments

The Kornman Defendants argue that the Complaint must be dismissed pursuant to Fed. R.

Bankr. P. 7012 because this Court lacks post-confirmation jurisdiction over the claims asserted in the

Second Adversary Proceeding. The Kornman Defendants argue that the Fifth Circuit has taken a narrow view of post-confirmation jurisdiction, as articulated in *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388 (5th Cir. 2001) and its progeny. The *Craig's Stores* court announced the rule as follows: "after a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan." *Craig's Stores*, 266 F.3d at 390. The Kornman Defendants argue that under this test, the Court lacks jurisdiction over the claims because the claims are not ancillary to the Judgment as a post-judgment collection action. Rather, the Kornman Defendants argue that the Second Adversary Proceeding is instead a new lawsuit that alleges new causes of action against new defendants, brought several years post-confirmation, and does not involve the interpretation, implementation or execution of the Plan. The Kornman Defendants further argue a dismissal of the Second Adversary Proceeding will not prejudice the Trustee because "to the extent that there were any fraudulent transfers made by any of the judgment debtors, [the Trustee] may step into the shoes of those judgment debtors by appropriate state law collection proceedings, and then bring causes of action for alleged fraudulent transfers if it is appropriate to do so under state fraudulent transfer law." Motion, ¶ 10.

In response, the Trustee advances two jurisdictional theories. First, the Trustee characterizes the Second Adversary Proceeding as a proceeding "supplementary to and in aid of enforcement of" the Judgment and argues that the Court has ancillary jurisdiction to enforce the Judgment because a court always has inherent jurisdiction to enforce, protect, and effectuate its own judgments. The Trustee argues that the jurisdiction of a court is not exhausted by the rendition of a judgment, but continues until that judgment is satisfied. The Trustee argues that this ancillary jurisdiction extends

not only to proceedings to enforce its judgment directly, but also to any proceedings to secure or preserve the fruits or advantages of a judgment. Because the court's jurisdiction in such instances is based on the original case, the Trustee argues that the jurisdiction in the second suit exists even if the court would not have had jurisdiction over the second suit if it had been brought as an original suit. Citing primarily to *Peacock v. Thomas*, 516 U.S. 349 (1996) and *Epperson v. Entertainment Express, Inc.*, 242 F.3d 100 (2nd Cir. 2000), the Trustee argues that federal courts have ancillary jurisdiction over fraudulent conveyance actions under state law. Further, citing several cases outside of this Circuit, the Trustee argues that "these principles . . . apply with respect to judgments of bankruptcy courts just as they do with respect to judgments of other federal courts." *Trustee's Resp. In Opp to Mot. To Dismiss by Kornman Defs.*, p. 7.

Second, the Trustee argues that the Kornman Defendants' post-confirmation jurisdiction argument is irrelevant, because the Second Adversary Proceeding is not a new lawsuit – it is instead a supplementary proceeding in aid of enforcement of the Judgment, which is specifically authorized by Fed. R. Civ. P. 7069. The Trustee distinguishes the *Craig's Stores* line of cases on the ground that none of them were cases brought to enforce a bankruptcy court judgment and thus did not involve the ancillary enforcement jurisdiction of the bankruptcy court. Further, the Trustee argues that to the extent that *Craig's Stores* applies, its test for post-confirmation jurisdiction is satisfied because a key feature of the Plan was the creation of the Plan Trust to pursue recovery on the claims asserted in the First Adversary Proceeding and thereafter enforcement of any judgment rendered in the First Adversary Proceeding. The Trustee notes that in the order confirming the Heritage Plan, the Court "retained jurisdiction to the fullest extent legally permitted, over the Bankruptcy Case, and any and

all disputes or proceedings involving this Order, the Plan, and administration of the Creditor Trust."[3]

*Trustee's Resp. In Opp to Mot. To Dismiss by Kornman Defs.*, p. 10.

## II.    LEGAL ANALYSIS

### A.    Jurisdiction under 28 U.S.C. § 1334

The Court must first analyze its subject matter jurisdiction under section 1334 over the claims asserted in the Second Adversary Proceeding and then determine whether, and how, the scope of that jurisdiction is circumscribed post-confirmation.[4]  First, the Court notes that although the Complaint alleges jurisdiction pursuant to 28 U.S.C. §§ 157, 1331, 1334, 1963 and 2201, *see* Complaint, ¶ 4, section 1334 is the sole statutory source of bankruptcy court jurisdiction.  *In re Today's Destiny*, 2007 WL 2028111 (Bankr. S.D. Tex. July 6, 2007).

Section 1334(b) lists three types of proceedings over which this Court has jurisdiction – those "arising under title 11," those "arising in" a case under title 11, and those "related to" a case under title 11.  *Wood v. Wood (In re Wood)*, 825 F.2d 90, 92 (5th Cir. 1987).[5]  Claims that "arise under" or "arise in" a bankruptcy case are "core" matters.  *WRT Creditors Liquidation Trust v. C.I.B.C.*

---

[3] Of course, neither the Plan nor the order confirming it can confer subject matter jurisdiction on this Court.  However, the absence of a provision *retaining* the jurisdiction conferred by section 1334 may leave it lacking.

[4] The source of a bankruptcy court's jurisdiction is neither the Bankruptcy Code nor the terms of a confirmed plan; rather, the source of jurisdiction is 28 U.S.C. § 1334, which grants jurisdiction over cases under title 11 and proceedings arising under title 11, arising in a case under title 11, or related to a case under title 11.  *In re U.S. Brass Corp.*, 301 F.3d 296 (5th Cir. 2002).  Moreover, 28 U.S.C. § 157 does not give bankruptcy courts jurisdiction beyond that granted by section 1334; it merely allows district courts to assign cases to bankruptcy courts.  *In re Walker*, 51 F.3d 562 (5th Cir. 1995).

[5] The Fifth Circuit has held that "[f]or the purpose of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between proceedings 'arising under,' 'arising in a case under,' or 'related to a case under,' title 11.  These references operate conjunctively to define the scope of jurisdiction.  Therefore, it is necessary only to determine whether a matter is at least 'related to' the bankruptcy." *In re Wood,* 825 F.2d at 93.  The distinction is relevant, however, for determining whether a proceeding is core or non-core.

*Oppenheimer Corp.*, 75 F.Supp. 2d 596, 606 (S.D. Tex. 1999). Claims that "relate to" a bankruptcy case, but do not arise under the Bankruptcy Code or arise in a bankruptcy case are "non-core" matters. *Id.*

"Arising under" jurisdiction involves causes of action created or determined by a statutory provision of title 11. *In re Wood*, 825 F.2d at 96. "Arising in" jurisdiction is not based on a right expressly created by title 11, but is based on claims that have no existence outside bankruptcy. *Id.* at 97. "Related to" jurisdiction exists if "the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *Celotex Corp. v. Edwards,* 514 U.S. 300, 307 n. 6 (1995); *In re U.S. Brass Corp.,* 301 F.3d 296 (5th Cir. 2002); *In re Wood*, 825 F.2d at 93. The Fifth Circuit has further stated that "an action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and . . . in any way impacts upon the handling and administration of the bankrupt estate." *U.S. Brass*, 301 F.3d at 304; *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 752 (5th Cir. 1995) (internal citations omitted).

A cause of action under 11 U.S.C. § 550 is one which "arises under" title 11, *In re Gandy*, 299 F.3d 489, 496-97 (5th Cir. 2002), as it invokes a right created by title 11 and is not available to a debtor outside of bankruptcy. *Id.* Accordingly, this Court has subject-matter jurisdiction over this claim, unless such jurisdiction is circumscribed post-confirmation, which will be addressed below.

The claim under Texas's Uniform Fraudulent Transfer Act ("TUFTA") does not invoke a right created by title 11, and clearly exists outside of bankruptcy. Therefore, at most, it is a "related to" claim under section 1334(b). In *In re Ramirez*, 413 B.R. 621 (Bankr. S.D. Tex. 2009), the bankruptcy court concluded, relying in part on 28 U.S.C. § 157, that the TUFTA claim before it was

a "core" proceeding – *i.e.*, that it was either a proceeding which invoked a substantive right provided by title 11 or a proceeding that by its nature could only arise in the context of a bankruptcy case. *See In re Wood*, 825 F.2d at 97. Despite the fact that the TUFTA claim was "rooted in state law," the court concluded that the TUFTA claim before it was a core claim because it was a "federal claim under 11 U.S.C. § 544 as a result of the commencement of the bankruptcy case." *Ramirez*, 413 B.R. at 628.

Here, however, the Trustee has conceded that he "brings this action not as a bankruptcy trustee under Section 544 of the Bankruptcy Code, but as a judgment creditor with respect to the valid and unsatisfied Final Judgment." *See* Trustee's Resp. In Opp. To Def. Patricia Mason's Mot. For Partial Summ. J and Br. In Supp.*, p. 3.[6] Thus, the TUFTA claim here is not asserted as a "federal" claim by virtue of the use of section 544's strong-arm powers. Accordingly, this case differs from *Ramirez* and this Court reaches a different conclusion regarding the TUFTA claim's status as a "core" claim. Had the Trustee's TUFTA claim been asserted pre-confirmation, this Court would clearly have had "related to" jurisdiction over it, as the outcome of that claim would have had a conceivable effect on the estate. Recovery on the TUFTA claim would have brought funds into the Judgment Debtors' hands and in those hands the Trustee could have executed on those funds, thereby increasing the pool of assets available for distribution to creditors. So, the question becomes – what effect did confirmation of the Plan have on the "related to" jurisdiction this Court could have otherwise asserted over the Trustee's TUFTA claim?

As the Kornman Defendants have pointed out, this Court's jurisdiction is more narrow during

---

[6] It appears that any claim under section 544 was long ago barred by the expiration of the time periods set forth for the filing of such proceedings in 11 U.S.C. § 546(a). Thus, the Trustee can only be bringing the TUFTA claim as a judgment creditor.

the post-confirmation period, as described by Fifth Circuit precedent. In *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388 (5th Cir. 2001), the Fifth Circuit examined the contours of a bankruptcy court's post-confirmation jurisdiction. The facts in *Craig's Stores* were as follows: the debtor had a pre-petition contract with a bank to administer its credit card program and assist with financing by purchasing the debtor's receivables. In 1993, the debtor filed for relief under chapter 11. The contract with the bank was assumed during the bankruptcy case as part of the plan, which was confirmed in 1994. In mid-1996, the post-confirmation debtor sued the bank, asserting state law claims for damages alleged to have arisen in 1994 and 1995, pre-confirmation (and post-petition). The debtor argued that the bankruptcy court had jurisdiction over the dispute because the dispute involved a pre-confirmation contract, the contract was assumed under the plan, and the resolution of the dispute could affect the debtor's ability to make its plan payments.

The Fifth Circuit first noted that the cited factors "are subsumed in Craig's theory that so long as a bankruptcy case remains open, jurisdiction exists if a dispute is "related to" the bankruptcy . . . that is, if the outcome of the proceeding could conceivably have an effect on the debtor's estate." *Craig's Stores*, 266 F.3d at 390. The Fifth Circuit rejected that view, instead stating that the debtor's emergence from bankruptcy protection carries "critical significance." *Id.* The Fifth Circuit stated that "[a]fter a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan." *Id.* Applying this "more exacting theory" to the facts before it, the Fifth Circuit concluded that the debtor's claims against the bank

> principally dealt with post-confirmation relations between the parties. There was no antagonism or claim pending between the parties as of the date of the reorganization. The fact that the . . . contract existed throughout the reorganization and was, by implication, assumed as part of the plan is of no special significance. And even if such

circumstances might bear on post-confirmation bankruptcy court jurisdiction, no facts or law deriving from the reorganization or the plan was necessary to the claim asserted by Craig's against the Bank. Finally, while Craig's insists that the status of its contract with the Bank will affect its distribution to creditors under the plan, the same could be said of any other post-confirmation contractual relations in which Craig's is engaged. In sum, the state law causes of action asserted by Craig's against the Bank do not bear on the interpretation or execution of the debtor's plan and therefore do not fall within the bankruptcy court's post-confirmation jurisdiction.

*Id*. at 391.

The Fifth Circuit also distinguished its earlier decision in *In re Case*, 937 F.2d 1014 (5th Cir. 1991). *Case* involved a post-confirmation dispute over a promissory note provided for in the debtor's plan, and the *Case* court held that the dispute was a "core" proceeding. The note had been executed in settlement of a creditor's claim as part of the plan itself. The Fifth Circuit distinguished *Case* on the ground that the post-confirmation dispute in *Craig's* did not involve any obligation created by the plan.

The Fifth Circuit refined its analysis of post-confirmation jurisdiction in *In re U.S. Brass Corporation*, 301 F.3d 296 (5th Cir. 2002). In *U.S. Brass*, the confirmed chapter 11 plan provided that certain claims against the debtor would be resolved in a court of competent jurisdiction and determined either by settlement or by final judgment. Post-confirmation, the debtor and certain claimants asked the bankruptcy court to approve an agreement to instead resolve the claims through arbitration. The bankruptcy court denied approval of that agreement, on the ground that the agreement would constitute a modification of a substantially-consummated plan in violation of 11 U.S.C. § 1127. On appeal, parties who had objected to the agreement argued that the bankruptcy court lacked jurisdiction to entertain the motion. The Fifth Circuit noted that it had rejected the expansive test for "related to" jurisdiction in the post-confirmation context in *Craig's Stores*, and noted that in the case before it, the debtor was still obligated under the plan to resolve the disputed

claims. The claimants and the debtor wanted to resolve those claims through arbitration rather than litigation as provided for in the plan, and argued that the arbitration mechanism was consistent with the plan. The objectants relied, in opposing that motion, on the Code's prohibition on modification of a substantially consummated plan. The Fifth Circuit stated:

> Bankruptcy law will ultimately determine this dispute, and the outcome could affect the parties' post-confirmation rights and responsibilities. Furthermore, this proceeding will certainly impact compliance with or completion of the reorganization plan. Consequently, . . . the motion pertains to the plan's implementation or execution and therefore satisfies the *Craig's Stores* test for post-confirmation jurisdiction."

*U.S. Brass*, 301 F.3d at 305.

In *Newby v. Enron Corp.*, 535 F.3d 325 (5th Cir. 2008), a case cited by the Kornman Defendants, the Fifth Circuit was asked to consider whether the district court, in a removed action, maintained "related to" jurisdiction post-confirmation. The *Newby* court characterized three factors as being critical to its earlier decision in *Craig's Stores*: (1) the claims at issue in *Craig's Stores* dealt with the post-confirmation relations between the parties, (2) there was no antagonism or claim pending between the parties as of the date of confirmation, and (3) no facts or law deriving from the reorganization or plan were necessary to a resolution of the claims. In short, the *Newby* court noted that the *Craig's Stores* claims were post-confirmation claims based on post-confirmation activities. *Newby*, however, involved claims arising from pre-confirmation activities, which claims were raised and asserted pre-confirmation; the issue before the Fifth Circuit in *Newby* was whether confirmation of a plan while those claims were pending divested the bankruptcy court of jurisdiction. The Fifth Circuit held that the bankruptcy court did not lose, by virtue of plan confirmation, jurisdiction over claims asserted pre-confirmation involving pre-confirmation activities. The Fifth Circuit noted that the *Newby* plaintiff's claims fell "well outside" the first two *Craig's Stores* factors, and therefore

those two factors weighed heavily in favor of bankruptcy jurisdiction.

With this framework in mind, this Court turns to its analysis of its post-confirmation jurisdiction in the Second Adversary Proceeding. First, the Court notes that neither party has made any effort to distinguish between the types of claims asserted in the Second Adversary Proceeding (*i.e.*, those under section 550 of the Code and those asserted under state law) as they may relate to this Court's jurisdiction. However, the Court believes that such distinctions are necessary and appropriate.

As noted earlier, the Complaint in the Second Adversary Proceeding first asserts a claim brought pursuant to section 550 – which is a "core" claim as the rights that form the basis of the claim arise under the Bankruptcy Code. The Kornman Defendants have failed to cite a single case – from any jurisdiction – in which a court has held that it lacks post-confirmation jurisdiction over chapter 5 claims.[7] The Court's own research has also failed to locate such a case. The Court's research has, however, located cases which have disposed of, on the merits, avoidance actions brought post-

---

[7] The Court inquired at oral argument on the Motion whether the Kornman Defendants were taking the position that the Court lacked post-confirmation jurisdiction over even the core claim under section 550, and the Kornman Defendants' counsel indicated that he wanted to brief the issue. The Kornman Defendants in fact filed a post-hearing brief. That brief, however, fails to address this point further or to cite any authority for the proposition that the Court lacks post-confirmation jurisdiction over "core" chapter 5 claims. Instead, the Kornman Defendants argue that "the Fifth Circuit views the determination of core v. non-core as an issue separate and apart from post-confirmation jurisdiction under § 1334. Post-confirmation jurisdiction under § 1334 is a necessary prerequisite, and a bankruptcy court cannot look to its authority to hear and determine a matter as a core proceeding under § 157 as a substitute for meeting the Fifth Circuit's exacting standard under § 1334 for post-confirmation jurisdiction, as articulated in *Craig's Stores* and *U.S. Brass*." *See Defs.' Supp. Briefing in Supp. Of Defs' Mot. To Dismiss*, p. 5.

The Kornman Defendants' argument defies logic. As noted by the Fifth Circuit in *U.S. Brass*, "if a matter within the broad scope of § 1334(b) satisfies *the more precise notion of a core proceeding*, § 157 authorizes the bankruptcy court to decide the matter and enter a final judgment." *U.S. Brass*, 301 F.3d at 304 (emphasis added). In other words, "core" proceedings are a subset of actions over which the court has subject matter jurisdiction under section 1334(b). If a proceeding is a "core" proceeding, then by definition it is one over which the Court has subject matter jurisdiction under section 1334(b). It is not that the Court is looking to section 157 – the exclusion of section 1334 – to establish jurisdiction. Rather, having found a proceeding to be "core" under section 157, the Court concludes that the proceeding must, by definition, be one over which the Court has section 1334(b) jurisdiction.

confirmation – without raising a lack of subject matter jurisdiction as an impediment to the prosecution of such claims. *See, e.g. In re Bankvest Capital Corp.*, 375 F.3d 51 (1ˢᵗ Cir. 2004) (chapter 11 plan may provide for the retention and prosecution of avoidance powers and if it does so, those actions may be prosecuted post-confirmation); *In re Falcon Products, Inc.*, 372 B.R. 474 (Bankr. E.D. Mo. 2007) (stating that court had core post-confirmation jurisdiction over action to recover preference claim). This is significant, as the Fifth Circuit, like most other courts, has held that federal courts have a continuing obligation to examine the basis for their subject matter jurisdiction, *MCG, Inc. v. Great Western Energy Corp.*, 896 F.2d 170 (5ᵗʰ Cir. 1990), and the court may raise a lack of jurisdiction *sua sponte*, at any point in the case. *Id.* Moreover, the Federal Rules themselves require that if the court "determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).[8] Presumably, if the courts disposing of post-confirmation chapter 5 claims had concluded that they lacked subject matter jurisdiction to do so, they would have said so.

In addition, the Court believes that the narrow test for post-confirmation jurisdiction as applied in *Craig's Stores* and its progeny was articulated in the context of proceedings which were

---

[8] Given this mandate, the Fifth Circuit's decision in *United Operating*, 540 F.3d 351 (5ᵗʰ Cir. 2008), although not on all fours with the present case, is instructive. In *United Operating*, the Fifth Circuit examined the ability of a post-confirmation chapter 11 debtor to pursue claims for alleged mismanagement of the debtor's property during the reorganization. The Fifth Circuit concluded that the reorganized debtor lacked standing to bring those claims, as it had not adequately provided for the claim's "retention and enforcement by the debtor" in its confirmed chapter 11 plan. *See* 11 U.S.C. § 1123(b)(3)(B). In the course of so holding, the Fifth Circuit noted that a debtor may properly preserve its standing to bring claims, *including claims to avoid a preferential transfer* by providing for such retention and enforcement in its plan. Notably, the Fifth Circuit did *not* dismiss the claims for lack of subject matter jurisdiction, despite its obligation, acknowledged in other cases, to examine the basis for subject-matter jurisdiction. The Court infers, from (1) the Fifth Circuit's express recognition that avoidance actions can be pursued post-confirmation when properly preserved in the plan, and (2) the Fifth Circuit's failure to raise a subject-matter jurisdiction issue in the context of its recognition of that ability, that the Fifth Circuit would conclude, where explicitly asked to do so, that a bankruptcy court continues to have post-confirmation jurisdiction over avoidance actions.

merely "related to" a case under title 11 – and not in proceedings which either "arose under" or "arose in" a case under title 11. *Craig's Stores* itself - which found jurisdiction lacking - discussed the standard in the context of applying the test for "related to" jurisdiction. *See Pelican Refining Co. v. Adams and Reese, LLP*, 2007 WL 1306808 (S.D. Tex. May 3, 2007) (noting that the *Craig's Stores* test applies to the "related to" jurisdiction prong, and finding a lack of jurisdiction over post-confirmation state law tort claims asserted by an assert purchaser at a bankruptcy sale against the debtor's professionals); *In re Enron Corp. Securities, Derivative & ERISA Litigation*, No. G-05-0012, 2005 WL 1745471 at *1 (S.D. Tex. July 25, 2005) ("post-confirmation 'related to' bankruptcy jurisdiction is restricted to matters pertaining to implementation or execution of the reorganization plan"); *Malesovas v. Sanders*, No. H-04-3122, 2005 WL 1155073 (S.D. Tex. May 16, 2005) (characterizing *Craig's Stores* test as determining the extent of "related to" jurisdiction); *In re Cano*, 410 B.R. 506 (Bankr. S.D. Tex. 2009) (noting that there may continue to be subject matter jurisdiction over proceedings "arising in" or "arising under" title 11 even post-closure and holding that bankruptcy court had subject matter jurisdiction over class action by chapter 13 debtors against mortgage lenders for misallocated plan payments and unauthorized fees collected post-discharge); *see also In re Bradley*, 989 F.2d 802 (5th Cir. 1993) (noting that in some instances, bankruptcy jurisdiction continues even post-closure because a proceeding may still "arise under" title 11 and reversing district court's determination that bankruptcy court lacked jurisdiction over adversary proceeding alleging a violation of 11 U.S.C. § 525); *Weaver v. Texas Capital Bank, N.A.,* 410 B.R. 453 (N.D. Tex. 2009*)* (upholding post-confirmation jurisdiction over a declaratory judgment action brought by a guarantor of the debt of a corporate chapter 11 debtor seeking a determination that the debt had been fully satisfied by distributions under the plan – because the declaration sought required

interpretation of the terms of the confirmed plan, the court held that the dispute fell "under the 'arising under' prong of bankruptcy jurisdiction and post-confirmation jurisdiction existed).

Lastly, even if the more narrow test for post-confirmation jurisdiction is applied to the Trustee's claim under section 550, the Court believes that it is satisfied here. Neither *Case, Craig's Stores*, *U.S. Brass*, nor *Newby* should be read in isolation; the Fifth Circuit's views on post-confirmation jurisdiction are best distilled by a comparison of its cases on the subject. The Fifth Circuit found post-confirmation jurisdiction existed in *Case*, because the dispute in *Case* was a core proceeding that could "not be severed from the remainder of the bankruptcy court proceedings. The promissory note though satisfying a pre-bankruptcy debt, was confected in the general negotiations seeking to settle all claims against the estate and was necessary to the formulation of a reorganization plan which was acceptable to all creditors. The note was provided for in, and executed as an integral part of, the settlement agreement and reorganization plan which was confirmed by the bankruptcy court." *Case*, 937 F.2d at 1020. The Fifth Circuit thus held that a dispute involving that promissory note was a "core" proceeding over which the bankruptcy court had post-confirmation jurisdiction. *Craig's Stores* found jurisdiction lacking where jurisdiction was asserted to be "related to," rather than "core," and (1) the claim involved purely post-confirmation relations between the parties, (2) there was no antagonism or claim pending between the parties as of the date of confirmation, and (3) no facts or law deriving from the reorganization or the plan was necessary to resolution of the claim. The Fifth Circuit also noted that the fact that the status of the debtor's contract with the bank would affect the debtor's distribution to its creditors was *not* significant, because "the same could be said of any other post-confirmation contractual relations . . . ." *Craig's Stores*, 266 F.3d at 391. The *U.S. Brass* court found post-confirmation jurisdiction existed where (1) bankruptcy law (as opposed to

state law) would ultimately determine the dispute, and (2) the debtor had an obligation under the plan to resolve certain claims, and the motion before the bankruptcy court sought approval of one method of satisfying that plan obligation, and thus the motion impacted compliance with or completion of the plan. The *Newby* court found that post-confirmation jurisdiction continued to exist over claims that had been asserted pre-confirmation and which involved pre-confirmation activities. Here, the claim does not involve purely post-confirmation relations between the parties, since many (although not all) of the challenged transfers took place pre-confirmation, and some even took place pre-petition. There was antagonism pending between some (although not all) of the parties at the time of confirmation. For example, Steadfast Investments, L.P is a judgment debtor by virtue of the Judgment (that resulted from the First Adversary Proceeding, asserted pre-confirmation), and is also alleged to be a transferee of assets from other of the Judgment Debtors. Prosecution of the chapter 5 claims asserted in the First Adversary Proceeding was an integral component of the Plan, and section 550 is a statutory remedy in furtherance of those same chapter 5 claims – merely providing for expanded recovery based upon the same liability as was asserted pre-confirmation. Most significantly, in this Court's view, the Trustee's section 550 claim is clearly a "core" claim as it invokes a right created by title 11 which is not available to a debtor outside of bankruptcy. Bankruptcy law, not state law, will resolve this dispute, as the Trustee will need to prove the statutory elements of his section 550 claim, and the Court will need to consider any statutory defenses raised under section 550(b) of the Bankruptcy Code.

Accordingly, and for all of the foregoing reasons, the Court concludes that it has post-confirmation jurisdiction over the Trustee's claim under section 550.

However, the Trustee's TUFTA claim stands on a different footing. While it is true here, as

well, that there was antagonism between some (but not all) of the parties at the time of confirmation, and that some (but not all) of the challenged transfers took place pre-confirmation, it is also true that no bankruptcy law will be involved in the resolution of the TUFTA claim. No facts or law deriving from the reorganization will determine the dispute. As noted previously, the Trustee is not asserting this claim by virtue of his status as Trustee of Heritage's bankruptcy estate, as he was in connection with the First Adversary Proceeding. He is instead asserting rights as a judgment creditor – of entities who were never in bankruptcy at all. Therefore, it cannot be said that his prosecution of the TUFTA claim asserted here was a key feature of the Heritage Plan. For example, the Trustee, as a judgment creditor of Ettman Trust, which was never in bankruptcy, is suing Treasured Investment – an entity which was also never in bankruptcy and which was not even a party to the First Adversary Proceeding – to recover property that Ettman Trust is alleged to have fraudulently transferred to Treasured Investment. The fact that the Trustee got his judgment against Ettman Trust in a bankruptcy court seems of little legal significance.

Here, the TUFTA claim is merely "related to" a case under title 11, as it would have an existence outside of bankruptcy; it is not a core proceeding, and it is related to the bankruptcy in only the most general sense – really, only by the fact that the Trustee got his judgment against the non-debtors in the bankruptcy court. The TUFTA claim will involve new and different proof, beyond that already proffered during the First Adversary Proceeding – for example, the Trustee will have to prove the elements of a claim under TUFTA as to each of the Judgment Debtors – although in the First Adversary Proceeding, the Trustee proved the elements of his TUFTA claim only as to Heritage. The Court also notes that several of the transfers challenged in the Complaint were allegedly made by an entity called "The Oak Group" – which is a stranger to the First Adversary Proceeding and thus not

a Judgment Debtor by virtue of the Judgment. In *Berry v. McLemore*, 795 F.2d 452 (5th Cir. 1986), the Fifth Circuit held that a garnishment action seeking enforcement against third parties who were strangers to the underlying judgment instituted new proceedings, and the obligations of the new defendants were completely independent of the primary judgment.

For these reasons, the Court concludes that it lacks post-confirmation subject matter jurisdiction over the Trustee's TUFTA claim under section 1334.[9]

## B.    Ancillary Jurisdiction

The Court's conclusion that it lacks subject matter jurisdiction under section 1334 does not fully resolve this dispute. The Trustee argues that the jurisdictional determination under section 1334 is not dispositive, as this Court has ancillary jurisdiction over the TUFTA claim.[10] Ancillary jurisdiction is defined as "a court's jurisdiction to adjudicate claims and proceedings related to a claim that is properly before the court." Black's Law Dictionary 868 (9th Ed. 2009).

The Trustee argues that this Court has ancillary jurisdiction over the TUFTA claim, as a court has inherent enforcement jurisdiction under that doctrine. Specifically, the Trustee argues:

> A fundamental legal principle long recognized by United States courts is that a court has jurisdiction to enforce, protect, and effectuate its own judgments. This jurisdiction to entertain proceedings to enforce the court's own judgment is inherent, and derives from the jurisdiction that gave the court power to render the judgment. Without jurisdiction to enforce a judgment entered by a federal court, judicial power

---

[9] The Court acknowledges the Trustee's argument that requiring the Trustee to assert his section 550 claim in one court and his TUFTA claim in a separate state court action may multiply expense for the Plan Trust, waste judicial resources and fail to further the interests of anyone other than the Kornman Defendants. However, convenience, cost-savings and judicial economy, while laudable goals, are no substitute for subject matter jurisdiction.

[10] As noted earlier, neither side distinguishes between the two types of claims asserted in the Second Adversary Proceeding. However, because the Court concludes that it has jurisdiction under section 1334 over the section 550 claim, the Court's discussion of ancillary jurisdiction is limited to the TUFTA claim, over which this Court has concluded it lacks subject matter jurisdiction under section 1334.

would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution. Thus, a court has ancillary jurisdiction to entertain legal proceedings to carry into effect its judgment. This jurisdiction extends not only to proceedings to enforce the judgment directly, but also to any proceedings to secure or preserve the fruits and advantages of a judgment or decree. Because a federal court's jurisdiction in such instances is based on the original case, the jurisdiction in the second suit exists even if the court would not have had jurisdiction over the second suit if it had been brought as an original suit.

*See Trustee's Resp. In Opp. To Mot. To Dismiss by Kornman Defs.*, pp. 4-5 (internal quotations and citations omitted). For this proposition, the Trustee cites many cases – the principal one of which is *Peacock v. Thomas*, 516 U.S. 349 (1996). All of them, however, (including *Peacock*) involved a dispute respecting a *district court's* exercise of ancillary jurisdiction. The Trustee next argues that

> [t]hese principles, and this conclusion, apply with respect to judgments of bankruptcy courts just as they do with respect to judgments of other federal courts. Where a bankruptcy court has subject matter jurisdiction over an adversary proceeding and renders a judgment therein, the bankruptcy court continues to have ancillary jurisdiction to enforce its judgments even after the underlying bankruptcy case is closed.

*Trustee's Resp. In Opp to Mot. To Dismiss by Kornman Defs.*, p. 7. For this proposition, the Trustee cites to three cases[11] – two outside of the Fifth Circuit.[12] The Fifth Circuit, however, has issued several significant decisions on the subject, one of which post-dated *Peacock*.

---

[11] The Trustee cites *McGowan v. Fraley*, 296 B.R. 1 (9th Cir. BAP 2003), *Bob Colton Enter., Inc. v. Grauer*, 2009 Bankr. Lexis (Bankr. D. Md. 2009), and *Credit Agricole Indosuez v. JLH, LLC*, 2000 U.S. Dist. Lexis 881 (E.D. La. 2000).

[12] The third case, *Credit Agricole Indosuez v. JLH, L.O.C.*, is an unreported decision from the Eastern District of Louisiana, which sits within the Fifth Circuit. *Credit Agricole* simply stands for the unremarkable proposition that a bankruptcy court has inherent power and jurisdiction to enforce the terms of an agreement it has approved. As the Trustee attempts to apply it here, that case is distinguishable. *Credit Agricole* involved a bankruptcy court order approving a settlement between two parties. A dispute between those same two parties erupted, and one of them moved in the bankruptcy court for an order enforcing the settlement. The other party to the settlement argued that mere approval of the agreement by the bankruptcy court did not result in ongoing jurisdiction to enforce the terms of the agreement. Having found the motion to be a "core" proceeding, the district court rejected that argument, noting that a bankruptcy court, like any other court, has inherent power to enforce its own judgments. The case did *not* involve a new lawsuit, filed against third parties and strangers to the original Judgment, to avoid transfers to them as in fraud of creditors.

In *Berry v. McLemore*, 795 F.2d 452 (5th Cir. 1986), a plaintiff obtained a money judgment against a police officer arising from the use of unnecessary force and constitutional violations. The police officer failed to pay the judgment. The plaintiff filed garnishment actions against the officer's employer (a township) and its insurer. As to the township, the plaintiff argued that the township was liable to the police officer because the township had promised the police officer that it would pay any judgment that the plaintiff obtained. The district court directed a verdict for the township, but the Fifth Circuit reversed, concluding that the district court lacked ancillary jurisdiction over the garnishment action. The Fifth Circuit noted that garnishment actions against persons who were not parties to the original action are construed as independent actions from the primary action which established the judgment debt, and thus require an independent basis for federal jurisdiction. The Fifth Circuit, quoting from *Riggs v. Johnson County,* 73 U.S. 166 (1868), which is also cited to this Court by the Trustee, stated:

> It is black letter law that the jurisdiction of a court is not exhausted by the rendition of judgment, but continues until that judgment is satisfied . . . Process subsequent to judgment is as essential to jurisdiction as process antecedent to judgment, else the judicial power would be incomplete and entirely inadequate to the purposes for which it is conferred by the Constitution.

*Berry v. McLemore*, 795 F.2d at 495. However, the Fifth Circuit continued: "[t]his post-judgment jurisdiction, however, is limited to those actions that a court may take *in that same action.*" *Id.* (emphasis added). The Fifth Circuit noted that

> in the instant case, enforcement is sought against third parties, who were strangers to the [original action] . . . Moreover, the basis of the garnishment proceedings and the basis of the claim against [the police officer] are different. In the [original action, the] claim arose out of an alleged violation of . . . constitutional rights; in the instant garnishment proceedings, [the] claims allegedly arise out of a contract . . . We can find no case where a court held that it had ancillary jurisdiction to consider claims in a *new and independent action* merely because the second action sought to satisfy or give additional meaning to an earlier judgment.

*Id.* at 455. The Fifth Circuit thus held that the district court could not exercise ancillary jurisdiction over the garnishment proceeding.

In *In re Walker*, 51 F.3d 562 (5th Cir. 1995), a debtor sued a mortgagee, alleging willful violation of the stay as a result of damage to her personal property after foreclosure of its security interest in her mobile home. The mortgagee responded and filed a third-party complaint against the person who had purchased the mobile home at issue from the mortgagee post-foreclosure, seeking contribution. So, at issue in *Walker* was pendent jurisdiction.[13] The mortgagee argued that section 362 of the Bankruptcy Code created a right to contribution, and that the bankruptcy court had pendent, supplemental jurisdiction over its third-party claim for contribution. The Fifth Circuit disagreed, after first finding that section 362 does not create a cause of action for contribution. The Fifth Circuit next held that the bankruptcy court lacked jurisdiction under section 1334 over the third-party claim for contribution, because that claim could have no conceivable effect on the administration of the estate. Next, the Fifth Circuit addressed supplemental jurisdiction. It rejected the mortgagee's argument that when sections 1334 and 1367 (the supplemental jurisdiction statute) are read together, a bankruptcy court is empowered to exercise supplemental jurisdiction. The Fifth Circuit first noted that section 1367 confers such jurisdiction only on district courts. It further relied on the United States Supreme Court's decision in *Finley v. United States*, 490 U.S. 545 (1989). *Finley* counsels that "two things are necessary to create jurisdiction . . . The Constitution must have given to the court the capacity to take it, and an act of Congress must have supplied it." *Finley*, 490 U.S. at 547-48. As there is no federal statute conferring supplemental jurisdiction on *bankruptcy*

---

[13] The term "pendent jurisdiction" refers to a court's jurisdiction to hear and determine a claim over which it would not otherwise have jurisdiction, because the claim arises from the same transaction as another claim that is properly before the court. Black's Law Dictionary 870 (9th Ed. 2009).

courts, the Fifth Circuit held that there is no such jurisdiction. Next, the Fifth Circuit pointed out that "there are strong arguments to support the position that the 'relate to' and 'arising in' jurisdictional components of § 1334(b) already allow bankruptcy courts to hear, to the extent Congress intended, all supplemental claims that have a logical relationship to an underlying bankruptcy proceeding." *Walker*, 51 F.3d at 572 (quoting *In re Houghton*, 164 B.R. 146, 148 (Bankr. W.D. Wash. 1994)). The Fifth Circuit also found it significant that absent from the list of types of cases which a district court may refer to a bankruptcy court under 28 U.S.C. § 157 are cases which are before the district court only on the basis of supplemental jurisdiction. "Simply put, even assuming that a district court could exercise jurisdiction supplemental to its bankruptcy jurisdiction described in 28 U.S.C. § 1334, there is nothing in the jurisdictional statutes to indicate that the district court could refer such a case to a bankruptcy court." *Walker*, 51 F.3d at 573. Finally, the Fifth Circuit stated:

> Congress has gone to great lengths to determine what proceedings may be tried by bankruptcy courts, and the exercise of ancillary and pendent jurisdiction by bankruptcy courts could subsume the more restrictive 'relate to' and 'arising in' jurisdiction, such that the latter would be rendered substantially, if not entirely, superfluous. Thus, it would be somewhat incongruous to gut this careful system by allowing bankruptcy courts to exercise supplemental jurisdiction to pull into bankruptcy courts matters Congress excluded in its specific jurisdictional grants.

*Id.* (internal citations and quotations omitted).

A few years later, the United States Supreme Court decided *Peacock*, upon which the Trustee heavily relies. The facts in *Peacock* were as follows: an employee sued his former employer's officer on a veil-piercing theory, to impose liability on the officer for an unsatisfied judgment the employee had obtained in an ERISA action against his former employer. The district court pierced the corporate veil, and entered judgment against the officer. The Fourth Circuit affirmed, holding that the district court had properly exercised ancillary jurisdiction over the claim. In the course of doing

so, the Fourth Circuit cited to *Riggs v. Johnson County*, 73 U.S. 166 (1867), a case also cited to this Court by the Trustee and distinguished by the Fifth Circuit in *Berry v. McLemore*, *supra*, for the proposition that the jurisdiction of a court is not exhausted by the rendition of a judgment but continues until the judgment is satisfied. The Fourth Circuit concluded that an attempt to pierce the corporate veil is a matter of substantive law that determines whether a shareholder can be liable for a judgment against the corporation. As such, the Fourth Circuit held that an attempt to pierce the corporate veil seeks to identify those parties against whom the judgment can be satisfied. "Because identification of those parties who are liable is necessarily antecedent to enforcement of the judgment against those parties, and because *Riggs* establishes that federal courts have 'ancillary' jurisdiction over enforcement of judgments, it would seem that the federal courts' ancillary jurisdiction would extend to the instant attempt to pierce the corporate veil." *Thomas v. Peacock*, 39 F.3d 493, 500 (4th Cir. 1994).

The United States Supreme Court disagreed. First, the Supreme Court held that a claim to pierce the corporate veil is not an independent claim but rather is a means of imposing liability on an underlying claim. Because the employee had alleged no underlying violation of ERISA as against the officer, the Supreme Court held that neither ERISA nor 28 U.S.C. § 1331 (the federal question jurisdictional statute) supplied the district court with subject matter jurisdiction over the veil-piercing claim. The Supreme Court next considered the doctrine of ancillary jurisdiction, and noted that a federal court "may exercise ancillary jurisdiction (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Peacock*, 516 U.S. 354. The Supreme Court noted that the case before it fell within neither

category, because there was insufficient factual dependence between the employee's ERISA claims against his employer and the veil-piercing claims the employee asserted against the officer. In addressing the second category of claims over which federal courts may exercise ancillary jurisdiction – *i.e.*, enforcement jurisdiction – the Supreme Court noted that "we have approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments – including attachment, mandamus, garnishment, and the *pre-judgment* avoidance of fraudulent conveyances." *Peacock*, 516 U.S. 349, 356. It further stated:

> our recognition of these supplementary proceedings has not, however, extended beyond attempts to execute, or to guarantee eventual executability of, a federal judgment. We have never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment.

*Id.* The Supreme Court further noted that in determining the reach of the federal courts' ancillary jurisdiction, "we have cautioned against the exercise of jurisdiction over proceedings that are entirely new and original, or where the relief sought is of a different kind or on a different principle than that of the prior decree." *Id.* It rejected the use of ancillary jurisdiction in the case before it, because the veil-piercing claim was founded not only upon different facts but also upon entirely new theories of liability. Moreover, and of significance, *Peacock* addressed the ability of a *district court* to exercise ancillary enforcement jurisdiction.

After *Peacock* was handed down, the Fifth Circuit decided *In re Bass,* 171 F.3d 1016 (1999). In *Bass*, judgment creditors of a Utah chapter 7 debtor (who had received a discharge and whose chapter 7 case had been closed) registered the judgment in the Bankruptcy Court for the Northern District of Texas. The judgment creditors then filed a garnishment and injunction suit against a trust

which had been providing income to the judgment debtor. The Fifth Circuit held that the bankruptcy court in Texas lacked subject matter jurisdiction over the suit. The Fifth Circuit first held that there was no bankruptcy jurisdiction under 28 U.S.C. § 1334, because (1) the debtor's bankruptcy case in Utah had been closed, and thus there was no bankruptcy estate for the lawsuit to relate to, and (2) any recovery that might result from the garnishment would not accrue to creditors in general. The judgment creditors then argued that the bankruptcy court had ancillary, enforcement jurisdiction over the lawsuit. The Fifth Circuit soundly rejected that argument, stating that

> the [judgment creditors] alternatively insist that the bankruptcy court has *inherent* jurisdiction to enforce the properly registered judgment. Unflawed logical analysis dictates otherwise. Inherent jurisdiction is an aspect of the kind of jurisdiction fomerly known as 'ancillary jurisdiction.' Ancillary jurisdiction is now one facet of 'supplemental jurisdiction,' and we have held that bankruptcy courts cannot exercise supplemental jurisdiction. Even though in *Walker* we dealt specifically with the type of supplemental jurisdiction previously labelled 'pendent' jurisdiction, our reasoning in *Walker* applies equally to all supplemental jurisdiction. Congress has gone to great lengths to determine what proceedings may be tried by bankruptcy courts, and the exercise of '*ancillary and pendent*' jurisdiction by bankruptcy courts could subsume the more restrictive 'relate to' and 'arising in' jurisdiction, such that the latter would be rendered substantially, if not entirely, superfluous.

*Bass*, 171 F.3d at 1023-24 (internal quotations and citations omitted; emphasis in original).

The *Bass* court's conclusion that the same principles counsel against a bankruptcy court's exercise of both pendent and ancillary jurisdiction is bolstered by the case law. The concept of ancillary jurisdiction has been codified, along with the concept of pendent jurisdiction, in the supplemental jurisdiction statute. *Id.*, *see* 28 U.S.C. § 1367.[14] As noted by the United States

---

[14] The Trustee argues that he has not sought to invoke 28 U.S.C. § 1367 as a jurisdictional basis. The Court agrees that the Trustee has not cited to section 1367. However, the Court notes that the Trustee relies primarily on Fed. R. Civ. P. 69, which authorizes proceedings supplementary to or in aid of judgment or execution." Fed. R. Civ. P. 69, however, is not capable of conferring jurisdiction upon this Court or any other. It merely provides that the procedure on execution and in proceedings supplementary to and in aid of judgment or execution must accord with the procedure of the forum state unless a federal statute provides otherwise.

Supreme Court,

> The terms of § 1367 do not acknowledge any distinction between pendent jurisdiction and the doctrine of so-called ancillary jurisdiction. Though the doctrines of pendent and ancillary jurisdiction developed separately as a historical matter, the Court has recognized that the doctrines are 'two species of the same generic problem.' Nothing in § 1367 indicates a congressional intent to recognize, preserve, or create some meaningful, substantive distinction between the jurisdictional categories we have historically labelled pendent and ancillary.

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 559 (2005); *see also Griffin v. Lee*, 621 F.3d 380, 385 ("the supplemental jurisdiction statute . . . combines the doctrines of pendent and ancillary jurisdiction under a common heading") (*quoting City of Chicago v. Int'l Coll. Of Surgeons*, 522 U.S. 156, 164 (1997)).

Notwithstanding the Fifth Circuit's pronouncement in *Bass*, the Trustee argues that "this Court has inherent ancillary jurisdiction . . . by reason of the Court's power to enforce its Final Judgment of July 13, 2009." *Trustee's Supp. Br.*, p. 5. The Trustee argues that *Berry* pre-dated the Supreme Court's decision in *Peacock;* thus, to the extent that *Berry* held that a supplementary garnishment proceeding exceeds the ancillary enforcement jurisdiction it has been overruled. The Trustee further argues that *Peacock* recognizes that supplementary proceedings may properly be brought against third parties who were not parties to the action that resulted in the judgment. The Court agrees, but notes that even if the Trustee's claims here are properly viewed as supplementary proceedings[15] and not new, independent claims within the meaning of *Berry*,[16] *Peacock* is of little help

---

[15] The Trustee has not cited to a single Texas case holding that a fraudulent transfer action such as is alleged here is a supplementary proceeding under Texas law. At least one court has held that a judgment creditor's claim under TUFTA required a separate cause of action and could not be litigated by post-judgment motion. *Kennedy v. Hudnall*, 249 S.W.3d 520 (Tex. App. – Texarkana, 2008).

[16] The Trustee argues that *Berry* is inconsistent with *Peacock*, and asserts that the Supreme Court in *Peacock* noted that it had accepted certiorari to resolve a conflict among the Courts of Appeals and then "cited *Berry* as one of the conflicting Court of Appeals cases." *Trustee's Supp. Br.*, p. 5. That is true. However, as

to the Trustee here, because *Peacock* involved the *district court's* exercise of ancillary jurisdiction, and the Fifth Circuit has held post-*Peacock* (in *Bass*) that bankruptcy courts do not enjoy the same inherent, enforcement ancillary jurisdiction as do the district courts.

The Trustee's attempts to distinguish *Bass* are unpersuasive. The Trustee points out that here – in contrast to *Bass* – the underlying bankruptcy case has not been closed. The Trustee further points out that in *Bass*, the Fifth Circuit held that the bankruptcy court lacked jurisdiction in part because the recovery in *Bass* would not inure to creditors in general – whereas in the present case, if the Trustee is successful on his TUFTA claim against the third parties, funds will come into the hands of the Judgment Debtors, which the Trustee will be able to execute on in order to satisfy the Judgment. What the Trustee overlooks is that this portion of the Fifth Circuit's ruling in *Bass* was addressing whether the bankruptcy court had jurisdiction under section 1334 - and not the portion of its ruling that addressed ancillary jurisdiction.[17] The Fifth Circuit did not find the closure of the bankruptcy case or the ability of recovered funds to go to creditors in general to be relevant or dispositive in its determination that the bankruptcy court could not exercise ancillary jurisdiction. The Trustee also recognizes that *Bass*, citing *Walker*, found that the bankruptcy court could not exercise supplemental jurisdiction – but the Trustee argues that *Walker* involved pendent, and not ancillary enforcement jurisdiction, and thus "*Walker* was different than this case, which does not involve pendent jurisdiction . . ." *See Trustee's Supp. Br.*, p. 9. That is true; but the Fifth Circuit *expressly rejected* the significance of that distinction in *Bass*. Moreover, the Supreme Court has recognized

---

recognized by two Courts of Appeals' decisions rendered subsequently to *Peacock*, the Supreme Court cited to *Berry* as being on the *correct* side of the split. *IFC Interconsult, AG v. Safeguard Inter. Partners, LLC*, 438 F.3d 298 (3rd Cir. 2006); *Futura Dev. Of Puerto Rico, Inc. v. Estado Libre Asosdiado de Puerto Rico*, 144 F.3d 7 (1st Cir. 1998).

[17]This Court has already concluded that it lacks jurisdiction over the TUFTA claim under section 1334.

that "nothing in § 1367 indicates a congressional intent to recognize, preserve, or create some meaningful, substantive distinction between the jurisdictional categories we have historically labelled pendent and ancillary." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 559 (2005).

The Trustee also argues that *Peacock* said that *"much* of the common-law doctrine of ancillary jurisdiction" was codified in 28 U.S.C. § 1367, and that several courts post-Peacock have recognized that there are two categories of ancillary jurisdiction – *i.e.*, the category which permits disposition by a single court of claims that are factually interdependent and the category which permits a court to vindicate its authority and effectuate its judgments – but have concluded that the second category – *i.e.,* inherent enforcement jurisdiction – has not been codified by section 1367. The Trustee cites five cases – four of them outside the Fifth Circuit. The fifth – *Tittle v. Enron Corp.*, MDL N.o. 1446, 2008 WL 4166172 (S.D. Tex. Aug. 29, 2008) – did make such a distinction and suggested that inherent enforcement jurisdiction has *not* been codified by section 1367. However, *Tittle* involved a *district court's* exercise of ancillary jurisdiction, and to the extent the Trustee asserts that the *Tittle* case governs here, his argument cannot be reconciled with the Fifth Circuit's pronouncement in *Bass*. Whether the species of ancillary jurisdiction reserved for enforcement of judgments has been codified or not, the Fifth Circuit has ruled that bankruptcy courts cannot exercise it.

For all of these reasons, the Court concludes that it lacks, or may not exercise, ancillary jurisdiction over the Trustee's TUFTA claim.

## III.    CONCLUSION

For the reasons set forth in detail above, the Court concludes that it has post-confirmation subject matter jurisdiction under 28 U.S.C. § 1334(b) over the Trustee's claim under section 550 of

the Bankruptcy Code.  The Court does *not* have post-confirmation subject matter jurisdiction under 28 U.S.C. § 1334(b) over the Trustee's TUFTA claim.  Nor does the Court have the ability to exercise ancillary jurisdiction over that claim.  Accordingly, the Kornman Defendants' Motion is granted in part, and the Trustee's TUFTA claim is dismissed for lack of jurisdiction.[18]

The Trustee is directed to prepare an Order consistent with this Memorandum Opinion, circulate it to the Kornman Defendants' counsel for approval as to form, and submit it to the Court within fourteen days.

# # # END OF MEMORANDUM OPINION  # # #

---

[18] This Court, like the Fifth Circuit in *Walker*, declines to address "the difficult question of whether a *district court* may address claims that are supplemental to its bankruptcy jurisdiction."  *Walker*, 51 F.3d 562, 570 (5th Cir. 1995) (referring the reader to Susan Block-Lien, *The Case Against Supplemental Jurisdiction: A Constitutional, Statutory, and Policy Analysis*, 62 Fordham L. Rev. 721 (1994)).  No party has asked the United States District Court for the Northern District of Texas to withdraw the reference, and no party has briefed this issue, despite the Court's invitation to do so at the hearing on the Motion.