U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

*[signature: Barbara J. Houser]*

**United States Bankruptcy Judge**

Signed May 11, 2011

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| THE HERITAGE ORGANIZATION, L.L.C., | § | CASE NO. 04-35574-BJH-11 |
| | § | |
| Debtor. | § | |
| | § | |
| DENNIS FAULKNER, TRUSTEE, | § | |
| Plaintiff, | § | ADV. PRO. NO. 10-3357-BJH |
| | § | |
| - against - | § | |
| | § | |
| EAGLE VIEW CAPITAL MANAGEMENT, et al., | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION

Before the Court is a motion for partial summary judgment seeking dismissal of claims asserted in this adversary proceeding pursuant to Fed. R. Bankr. P. 7056 (the "Motion"). The Motion is filed by Patricia Mason ("Mason"). This adversary proceeding, filed by Dennis Faulkner

**Memorandum Opinion**

("Faulkner") as Trustee of the Heritage Creditors Trust (the "Trustee"), is the latest lawsuit arising out of the bankruptcy proceeding of The Heritage Organization, LLC ("Heritage"). Heritage filed a voluntary petition for relief under chapter 11 on May 17, 2004 (the "Petition Date"). On August 16, 2004, Faulkner was appointed as the chapter 11 Trustee of Heritage's estate.

On September 12, 2007, the Court confirmed Heritage's plan of reorganization (the "Plan"). *See* Docket No. 1281 in Case No. 04-35574-BJH-11 (the "Confirmation Order"). Pursuant to the Plan, a creditors' trust was created (the "Plan Trust") and various assets, including causes of action asserted in Adversary Proceeding 06-3377-BJH (the "First Adversary Proceeding"), were transferred to the Plan Trust. *See* Docket No. 1201 in Case No. 04-35574-BJH-11, Art. 1.17, 1.29 and 6.1. Similarly, the claims of various creditors were also transferred to the Plan Trust, and those creditors are to be the beneficiaries of the proceeds of the First Adversary Proceeding. Faulkner was appointed as Trustee of the Plan Trust.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

The First Adversary Proceeding was filed on May 16, 2006, prior to confirmation of the Plan, by Faulkner in his capacity as the chapter 11 Trustee of the Heritage estate. Trial of the First Adversary Proceeding occurred in January of 2009, post-confirmation. After the filing of post-trial proposed findings of fact and conclusions of law, post-trial briefs and this Court's issuance of its Memorandum Opinion on May 11, 2009, the Court entered judgment on July 13, 2009 (the "Judgment") against thirteen defendants – namely, Gary M. Kornman, Steadfast Investments, L.P., GMK Family Holdings, L.L.C., Tikchik Investment Partnership, L.P., Ettman Family Trust I, Strategic Leasing, L.P., Valiant Leasing, L.L.C., Executive Aircraft Management, L.L.C., Executive Air Crews, L.L.C., Vehicle Leasing, L.L.C., The Heritage Organization Agency, Inc., Heritage

Properties, L.L.C., and Financial Marketing Services, Inc. (collectively, the "Judgment Debtors"). The Judgment avoided, pursuant to 11 U.S.C. §§ 544, 547 and 550, certain transfers found to be fraudulent and/or preferential. The Judgment further found the Judgment Debtors liable for the value of the property transferred, and awarded the Trustee a money judgment against each of the Judgment Debtors in various amounts, aggregating over $45 million. The Judgment further entitled the Trustee to "writs of execution and all other legal process to enforce this Final Judgment permitted by Federal Rule of Bankruptcy Procedure 7069, Federal Rule of Civil Procedure 69, and other applicable law." *See* Judgment, Docket No. 608 in the First Adversary Proceeding. A motion by the Judgment Debtors for a new trial was denied. Although the Judgment Debtors initially filed a notice of appeal, that appeal was subsequently dismissed. The Judgment is now final. Writs of execution issued from this Court on October 16, 2009 but to date, the Trustee's collection efforts have proven unsuccessful.

On March 9, 2010, the Trustee registered the Judgment in the United States Bankruptcy Court for the Southern District of Texas (the "Houston Bankruptcy Court"), which commenced Miscellaneous Proceeding No. 10-MP-0301 (the "Miscellaneous Proceeding"), and began collection efforts there.[1] Specifically, the Trustee filed applications for post-judgment writs of garnishment and an application for a turnover order. In addition, within the Miscellaneous Proceeding, the Trustee filed a document entitled "Complaint."[2] *See* Docket No. 72 in Misc. Pro. No. 10-MP-0301. That

---

[1] There is no provision the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure for a "miscellaneous proceeding." Rather, a miscellaneous proceeding is an administrative procedure that is used by a clerk of a bankruptcy court as a vehicle for filing or indexing any paper not associated with a case or proceeding for which a filing fee has been paid, including registering a judgment from another district. The effect of opening a miscellaneous proceeding is that it allows the clerk's office to assign a case number to track the progress of the paper. *See* Bankruptcy Clerk's Manual, Sec. 20, available at
http://jnet.ao.dcn/Bankruptcy/Bankruptcy_Clerks_Manual/Section_20.htm.

[2] For some unexplained reason, the Complaint appears on the docket with the title "Third Party Complaint," although the document is entitled only "Complaint."

**Memorandum Opinion** 3

document was filed on July 12, 2010. The Complaint is asserted against 32 named defendants and 100 "John Does." For present purposes, suffice it to say that the Complaint alleges that the recipients of the transfers avoided by the Judgment made subsequent transfers to other individuals and/or entities which are recoverable on several theories. Attached to the Complaint is what the Complaint alleges is a partial list of the alleged subsequent transfers.

A review of the docket in the Houston Bankruptcy Court shows that the Houston Bankruptcy Court never issued any summons to Mason, and that the Trustee has never filed proof of service of a summons on Mason in the Houston Bankruptcy Court. Mason is not listed in the Houston Bankruptcy Court's Electronic Case Filing ("ECF") system as a party to the Miscellaneous Proceeding, and Mason did not receive any ECF notices from the Houston Bankruptcy Court. No attorney has appeared on Mason's behalf in the Houston Bankruptcy Court.

Perhaps because there is no mechanism for filing an adversary proceeding complaint within the context of a miscellaneous proceeding, *see* n. 1, *supra*, the Trustee moved in the Houston Bankruptcy Court to sever the Complaint from the Miscellaneous Proceeding and to have a separate adversary proceeding commenced. *See* Docket No. 83 in Misc. Pro. No. 01-MP-0301. The defendants other than Mason, who alleges she was unaware of the Miscellaneous Proceeding, opposed that motion and argued that the Southern District of Texas was an improper venue. Bankruptcy Judge Marvin Isgur ordered the Trustee to file a response to that argument, and include an explanation "as to why the . . . Complaint should not be transferred to the United States District Court for the Northern District of Texas." *See* Docket No. 203 in Misc. Pro. No. 10-MP-0301. Unpersuaded by the Trustee's briefing in response to this order, Judge Isgur entered an order severing the Complaint and transferring it to the United States District Court for the Northern District

of Texas. *See* Docket No. 219 in Misc. Pro. No. 10-MP-0301. Upon receipt of the Complaint, the United States District Court for the Northern District of Texas entered an order referring the Complaint to this Court on October 29, 2010. The Complaint commenced Adversary Proceeding No. 10-3357 (the "Second Adversary Proceeding"), which was assigned to the undersigned, who presided over the Heritage bankruptcy case and the trial of the First Adversary Proceeding.

The Complaint arrived in this Court and the Second Adversary Proceeding was opened in this Court's ECF system on November 5, 2010. On November 8, 2010, this Court issued summonses.[3] A review of the docket in the Second Adversary Proceeding shows that on November 13, 2010, the summons and a copy of the Complaint was served on Mason by personal service at her address. *See* Docket No. 17. On December 8, 2010, Mason filed an answer to the Complaint. *See* Docket No. 35. The answer largely denies the material allegations of the Complaint and raises several affirmative defenses: (1) failure to state a claim on which relief may be granted, (2) the claims are barred in whole or in part by the applicable statute of limitations, (3) the Trustee lacks standing to assert all or some portion of the claims he asserts against her, (4) the claims are barred by *res judicata*, (5) the Trustee has already asserted avoidance claims against her in a pending proceeding in a Texas state court; accordingly, this Court should abstain from hearing the claims against her, (6) this Court lacks subject matter jurisdiction to enter a judgment against her, and (7) this Court lacks personal jurisdiction over her.

### A. The Allegations of the Complaint

---

[3] As a technical matter, the Court issues one summons with all of the defendants' names on it, and the plaintiff's counsel is responsible for making copies of that summons to serve upon each defendant.

The Complaint alleges that it is brought under 11 U.S.C. § 550, 28 U.S.C. §§ 1963 and 2201, Federal Rule of Civil Procedure 69 and Federal Rule of Bankruptcy Procedure 7069. The Complaint further alleges that the bankruptcy court has jurisdiction over the action pursuant to 28 U.S.C. §§ 157, 1331, 1334, 1963 and 2201.

The Complaint recites the existence of the Judgment and its finality. The only facts alleged as giving rise to the defendants' liability are as follows:

> Upon information and belief, the recipients of the fraudulent and/or preferential transfers avoided pursuant to the Final Judgment made transfers to mediate or immediate transferees under circumstances which make the value of such transfers to Defendants herein as mediate or immediate transferees recoverable by the Trustee from such mediate and immediate transferees under Section 550 of the United States Bankruptcy Code.
>
> Upon information and belief, the recipients of the fraudulent and/or preferential transfers avoided pursuant to the Final Judgment made subsequent transfers to Defendants herein under circumstances which make the value of such subsequent transfers recoverable against such Defendants pursuant to Texas Business & Commerce Code §§ 24.005, 24.008, 24.009, similar statutes of other states and jurisdictions whose law may apply, and other applicable principles of law and equity.

Compl., ¶¶ 11, 12. The first of these claims will be referred to as the "section 550" claim, and the second as the "TUFTA" claim. As noted earlier, the Complaint attaches what purports to be a partial list of transfers which the Trustee challenges. As is relevant here, the exhibit attached to the Complaint shows five transfers to Mason, all by Gary M. Kornman ("Kornman"), as follows:[4]

| Date | Amount |
|------|--------|
| 1/28/04 | $9,021.09 |
| 5/26/04 | $81,187.50 |
| 9/12/04 | $6,000.00 |
| 7/18/04 | $50,000.00 |
| June 2009 | Lexus |

---

[4] Mason asserts, and the Trustee does not dispute, that Mason is Kornman's wife, but that she and Kornman are separated and she has not lived with Kornman at the same address since October 30, 2008.

*See* Docket No. 1.

On December 15, 2010, Mason filed the Motion. The Trustee has opposed the Motion. The Court heard the Motion on January 31, 2011, at which the Court gave the parties the opportunity to file further briefing. The last of those briefs was filed on February 7, 2011, following which the Court took the Motion under advisement. This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law.

First, as a threshold matter and for the reasons set forth in the Memorandum Opinion entered on April 18, 2011, this Court concludes that it has subject matter jurisdiction over the section 550 claim pursuant to 28 U.S.C. § 1334(b), but that it lacks subject matter jurisdiction over the Trustee's TUFTA claim against Mason.[5] Accordingly, the TUFTA claim will be dismissed, and the Court will address the Motion only as it relates to the section 550 claim.[6]

### B. The Parties' Arguments

#### 1. The Statute of Limitations

The parties' arguments have evolved since the Motion was filed. Initially, Mason sought summary judgment on two grounds. First, she argued that the Trustee's claims are barred by the running of the statute of limitations set forth in 11 U.S.C. §§ 546(a) and 550(f). Second, she argued

---

[5] The defendants *other than* Mason moved to dismiss the Complaint on subject matter jurisdiction grounds. Mason did not join in that motion. Nevertheless, the Fifth Circuit, like most other courts, has held that federal courts have a continuing obligation to examine the basis for their subject matter jurisdiction, *MCG, Inc. v. Great Western Energy Corp.*, 896 F.2d 170 (5th Cir. 1990), and the court may raise a lack of jurisdiction *sua sponte*, at any point in the case. *Id*. Moreover, the Federal Rules themselves require that if the court "determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

[6] Mason essentially concedes that this Court has subject matter jurisdiction, post-confirmation, over the section 550 claim. *See Def. Patricia Mason's Suppp. Br. In Supp. Of her Mot. For Partial Summ. J. ("Mason Supplemental Brief"),* p. 7 ("In Mason's view, this Court has jurisdiction to hear a post-confirmation 'arising under' claim irrespective of whether that claim satisfies the jurisdictional prerequisites that the Fifth Circuit has applied to post-confirmation 'related to' claims").

**Memorandum Opinion** 7

that the Trustee lacks standing to pursue her for recovery of the transfer which occurred in 2009 (a transfer of a Lexus from Kornman to Mason). As to the first ground for summary judgment, Mason argued that pursuant to 11 U.S.C. § 550(f), an action under section 550 may not be commenced after the *earlier* of (1) one year after the avoidance of the transfer on account of which recovery is sought, or (2) the time the case is closed or dismissed. 11 U.S.C. § 550(f). Mason argued that since the Judgment was entered on July 13, 2009 and the Trustee did not file the Complaint until November 8, 2010, the section 550 claim is time-barred. Of course, at the time she filed the Motion, Mason was unaware that the Complaint had been originally filed in the Houston Bankruptcy Court,[7] literally the day before the Trustee's deadline under section 550(f) was to run.

The Trustee pointed that fact out in his response to the Motion, and argued that the transfer of the Complaint to another district does not cause the action to be barred by limitations if it was timely filed in the transferor court. Mason then switched gears and in reply argued that:

> (i) the Trustee's filing of the "Third-Party Complaint" in a Miscellaneous Proceeding in the Southern District of Texas was not the "commencement of an adversary proceeding; and (ii) in any event, the Trustee failed to comply with Rule 4 of the Federal Rules of Civil Procedure by deliberately failing to serve Mason with a summons and complaint within 120 days of the date he filed his "Third-Party Complaint" in Houston.

*Patricia Mason's Reply Br. In Supp. Of Her Mot. For Partial Summ. J. ("Mason Reply Brief")*, p. 8.

Mason argues that the Trustee cannot demonstrate good cause for the failure to timely serve Mason. Mason concedes that this Court has discretion to extend the time to serve a summons and complaint if the Trustee's claims "would otherwise run into a statute of limitations bar." *Mason*

---

[7] *See* Declaration of Patricia Mason, ¶¶ 4, 5 (attached as Ex. 2 to Mason's Reply Brief in Support of Her Motion for Partial Summary Judgment).

*Reply Brief*, p. 13. Nevertheless, Mason argues that an extension should be refused where the Court finds one of three factors: (i) delay caused by the plaintiff himself and not his attorney, (ii) actual prejudice to the defendant, or (iii) delay caused by intentional conduct. Mason argues that the third factor is present here, because the Trustee (i) failed to pay a filing fee, (ii) never sought issuance of a summons from the Houston Bankruptcy Court, (iii) failed to serve Mason with a summons or the Complaint during the entire time the Complaint was allegedly pending before the Houston Bankruptcy Court, and (iv) litigated important severance and venue transfer issues in the Houston Bankruptcy Court in Mason's absence. Mason also points out that the Trustee clearly knew where to serve her, since he served her with process in another case only two months before filing the Complaint.

The Trustee acknowledges that he failed to serve Mason with process until the 124th day after the filing of the Complaint in the Houston Bankruptcy Court. He further acknowledges that his failure to timely serve her "could have resulted in either the Court or Mason seeking to dismiss the claims against her pursuant to Federal Rule of Procedure 4(m) . . . However, none of those things actually happened." *Trustee's Supp. Br. In Opp. To Mot. For Partial Summ. J. By Patricia Mason and to Mot. To Dismiss by Kornman Defs. ("Trustee's Supplemental Brief")*, pp. 12-13. The Trustee argues that Mason did not seek, prior to service of process, to dismiss the claims against her under Fed. R. Civ. P. 12(b)(4) or 12(b)(5) for insufficient process or service of process. The Trustee argues that both of those defenses are waived when not included in a timely motion to dismiss or in the initial responsive pleading, and thus Mason has waived her right to seek such a dismissal now. Lastly, the Trustee argues that the issue before the Court on the Motion "pertains only to the statute of limitations." *Trustee's Supplemental Brief*, p. 13. Since the Trustee believes his Complaint was

timely filed, the Trustee asserts that the Motion should be denied.

### 2. The Trustee's Standing

Mason also asserts that even if the Trustee's claim is not barred by limitations, the Trustee lacks standing to pursue her for the alleged transfer to her by Kornman of a Lexus vehicle in June, 2009. Mason argues that only "Assets," as that term is defined in the Plan, were transferred to the Plan Trust and the term "Assets" is defined in such a way so as to exclude causes of action which did not exist on the Plan's effective date. Since the Plan's effective date occurred on September 26, 2007 and the Complaint seeks to attack a transfer made in 2009, Mason asserts that the cause of action pertaining to the 2009 transfer of the Lexus did not exist on the effective date and thus was never transferred to the Plan Trust. Mason did not cite to any case law in support of her standing arguments.

In response, the Trustee argues that Mason misapprehends the nature of the Trustee's attack on the transfer of the Lexus. The Trustee argues that he does *not* claim that the Lexus itself was transferred to the Plan Trust – rather, he argues that the claims he asserted against Kornman which resulted in the Judgment were transferred to the Plan Trust, and his standing derives from his status as a judgment creditor as a result of the Judgment entered on his claims against Kornman. The Trustee did not cite to any case law in support of his standing arguments either.

## II. LEGAL ANALYSIS

### A. Statute of Limitations/Service of Process

The Court must first address whether Mason is correct that the Trustee's filing of the Complaint in the Miscellaneous Proceeding was not the commencement of an adversary proceeding. The Court first notes that Mason has failed to cite any authority in support of this assertion. For the

reasons set forth below, the Court concludes that the Trustee's filing of the Complaint in the Miscellaneous Proceeding was the commencement of a civil action for statute of limitations purposes.

Federal Rule of Civil Procedure 3[8] provides that a "civil action is commenced by filing a complaint with the court." Federal Rule of Civil Procedure 5(d)[9] provides that "[a] paper is filed by delivering it: (A) to the clerk . . . ." The latter rule further provides that

> A court may, by local rule, allow papers to be filed, signed, or verified by electronic means that are consistent with any technical standards established by the Judicial Conference of the United States . . . A paper filed electronically in compliance with a local rule is a written paper for purposes of these rules."

Fed. R. Civ. P. 5(d)(3).

Here, it is undisputed that both the Northern and Southern Districts of Texas have adopted electronic filing procedures, and that the Complaint was electronically filed consistently with those procedures. Therefore, under a plain reading of the federal rules, the action was "commenced" when the Complaint was electronically filed in the Houston Bankruptcy Court.

Second, the rules are clear that the clerk "must not refuse to file a paper solely because it is not in the form prescribed by these rules or by a local rule or practice." Fed. R. Civ. P. 5 (d)(4). The Fifth Circuit has held that "the clerk does not possess the power to reject a pleading for lack of conformity with form requirements, and a pleading is considered filed when placed in the possession of the clerk of the court." *McClellon v. Lone Star Gas Co.*, 66 F.3d 98, 101 (5th Cir. 1995). Here, the Complaint was placed in the constructive possession of the clerk when it was electronically filed, and the clerk was without authority to refuse to accept the Complaint in the Miscellaneous

---

[8] Federal Rule of Bankruptcy Procedure 7003 provides that "Rule 3 F.R. Civ. P. applies in adversary proceedings."

[9] Federal Rule of Bankruptcy Procedure 7005 provides that "Rule 5 F.R. Civ. P. applies in adversary proceedings."

Proceeding. In fact, even if the Complaint had been erroneously delivered to the United States trustee or the United States District Court, the Court would have discretion, in the interest of justice, to deem it to have been filed with the Houston Bankruptcy Court as of the date of its mis-delivery. Fed. R. Bankr. P. 5005(c).

Third, although the Court's research has filed to uncover a single case in which a litigant filed a document purporting to be a complaint in a miscellaneous proceeding, which is a purely administrative vehicle and which does not generate the assignment of an adversary proceeding number, the Court relies upon analogy to similar situations which have been addressed in the case law. For example, in *In re Caldwell*, No. 02-41931, 2004 WL 4960380 at *1 (Bankr. D. Idaho May 17, 2004), the court held that a complaint to determine dischargeability was timely filed although "the pleading was not in the form of an adversary complaint . . . nor was it accompanied by a filing fee, an adversary cover sheet, or a proposed summons for issuance by the Clerk"). In *In re Rutherford*, 427 B.R. 656 (Bankr. S.D. Ohio 2010), the plaintiff's attorney mistakenly filed an objection to dischargeability in the main bankruptcy case, and not as a separate adversary proceeding, and did not pay the requisite filing fee. The court deemed the complaint to be timely filed, in part because the electronic case filing procedures established in that district did not advise counsel that the document would be deemed "unfiled" for failure to pay the required filing fee. In the present case, section (III)(F) of the Administrative Procedures for the Filing, Signing, and Verifying of Documents by Electronic Means in Texas Bankruptcy Courts (the "ECF Procedures," which have been adopted by both this Court and the Houston Bankruptcy Court) provides that

> when a document has been transmitted to the System in a manner consistent with these Procedures and the System has generated to the Electronic Filing a responsive 'Notice of Electronic Filing,' the document is filed as of the date and time noted on such Notice. A document is filed on a particular day if the transmission of the

document is completed prior to midnight in the Central time zone.

Thus, the Court concludes that the electronic filing of the Complaint, even if erroneously filed in the Miscellaneous Proceeding, properly commenced a civil action as it placed the Complaint within the constructive possession of the clerk, within time limits set forth in section 550.

Nevertheless, a review of the three dockets in which this Complaint appears reveals that neither this Court, the district court, nor the Houston Bankruptcy Court has ever collected a filing fee for the filing of this adversary proceeding. 28 U.S.C. § 1930(b) provides that the "Judicial Conference of the United States may prescribe additional fees in cases under title 11 of the same kind as the Judicial Conference prescribes under section 1914(b) of this title. The Judicial Conference has done so in promulgating the "Bankruptcy Court Miscellaneous Fee Schedule." *See* Attachment to Memorandum of James C. Duff, Director of Administrative Office of the United States Courts, dated November 23, 2009 (available at http://jnet.ao.dcn/Memos/2009_Archive/Dir9133.html). That schedule, at Item (6), provides that the Court is to charge for the filing of a complaint a fee of $250, except "[i]f the trustee or debtor-in-possession files the complaint, the fee must be paid only by the estate, to the extent there is an estate." Here, Dennis S. Faulkner was chapter 11 Trustee of the estate of Heritage. However, the Heritage Plan was confirmed and, as noted above, causes of action were transferred to a trust, created under the Plan. Faulkner has filed this Complaint *not* in his capacity as chapter 11 Trustee of the estate, as the estate has ceased to exist post-confirmation. Rather, the Complaint is filed in his capacity as "Trustee of the Heritage Creditors Trust." Complaint, ¶ 1. Therefore, the Court believes that a filing fee was required for the filing of the Complaint; yet, none has been paid. Despite this deficiency, the Court believes that the Complaint was nonetheless timely filed within the applicable statute of limitations. Several courts have held that the payment of

a filing fee is not jurisdictional, and the critical date by which to measure the timeliness of a complaint is its filing, and not the date on which a filing fee is paid. *In re Watlington*, No. 99-12096C-7G, 2000 WL 33673798 (Bankr. M.D. N.C. May 3, 2000) (plaintiffs' delivery of complaint to the clerk constituted constructive filing of the complaint on that date notwithstanding its failure to be accompanied by a filing fee); *Security Pacific Fin'l Corp. v. Bade (In re Bade)*, 87 B.R. 78 (Bankr. D. Neb. 1988) (finding complaint under 11 U.S.C. § 523 timely notwithstanding failure to pay filing fee within sixty days of the date first set for the meeting of creditors). Nevertheless, the Court will order that the Trustee pay the appropriate filing fee within fourteen days hereof or face dismissal of the Complaint.

Mason's second argument, raised for the first time in reply, is that service of the summons and Complaint upon her was deficient under Fed. R. Civ. P. 4(m).[10] Rule 4(m) provides:

> (m) Time Limit for Service. If a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff-- must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

It is undisputed that the Trustee did not serve Mason with the Complaint until the 124th day after the Complaint was filed. It is also undisputed that Mason had not, prior to filing her reply brief on the Motion, sought dismissal of the Complaint on this ground. Lastly, it is undisputed that the Trustee has not sought an extension of the time for service.

The Trustee contends that Mason has waived the defense of insufficiency of service of process.

---

[10] Federal Rule of Bankruptcy Procedure 7004(1)(1) provides that Rule 4(m) applies in adversary proceedings.

Rule 12(h) of the Federal Rules of Civil Procedure provides that any defense listed in Rule 12(b)(2) - (5) (which includes insufficiency of process) is waived by "(A) omitting it from a motion in the circumstances described in Rule 12(g)(2); or (B) failing to either: (i) make it by motion under this rule; or (ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course." In other words, objections to the sufficiency of service of process are waived if not raised in the answer or in a pre-answer motion. Neither has been done here. Mason's answer did not raise the defense of insufficiency of service of process. Mason did not file any pre-answer motion asserting the defense. Indeed, even the Motion, although one seeking summary judgment rather than dismissal under Fed. R. Civ. P. 12, did not initially raise insufficiency of process as a ground for relief. Mason asserts that she did not raise the issue in the Motion because she was unaware, prior to the Trustee's opposition to the Motion, that she had been sued in the Houston Bankruptcy Court. Her summary judgment evidence, however, attached to the Motion, includes a copy of the Complaint. The copy of the Complaint attached to the Motion is headed "In the United States Bankruptcy Court for the Southern District of Texas Houston Division," and it bears a caption which includes the designation "Case No. 10-MP-0301." Mason argues that she reasonably believed she had been sued in this Court, because the Complaint bore a file stamp indicating that it had been filed in the Northern District of Texas and she was served with a summons issued by this Court. However, as noted above, the Complaint itself was styled as having been filed in the Houston Bankruptcy Court, and it bore a case number which differed from the adversary proceeding number which appears on the summons issued by this Court. Moreover, the file stamp on the Complaint is from the United States *District Court* for the Northern District of Texas – which is not the Court which issued the summons. These discrepancies should certainly have put Mason on notice that

something was amiss. Therefore, the Court concludes that Mason has, in fact, waived the defense as she has not raised it in either her answer or in a pre-answer motion under Rule 12. Further, the Fifth Circuit has expressly rejected the argument that the seemingly mandatory language of Rule 4(m), which appears to require dismissal where a complaint has not been timely served, trumps the waiver provision of Rule 12(h). *Resolution Trust Corp. v. Starkey*, 41 F.3d 1018, 1021 (5th Cir. 1995) (construing Rule 4(j), the linguistically similar predecessor to Rule 4(m) and holding that "the law is clear, however, that objections to service are waived if not raised in the answer or pre-answer motion").

Even if the Court were to rule that Mason had not waived this defense, the Court would exercise its discretion to extend the Trustee's time for service by four days. The Court agrees with Mason that the Trustee has not shown "good cause" – in fact, the Trustee has not explicitly even sought such an extension. The Fifth Circuit has held, however, that even if the plaintiff lacks good cause, a court has discretionary power to extend the time for service. *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996). The Fifth Circuit has also intimated that a discretionary extension may be warranted if the applicable statute of limitations would bar the re-filed action. *Millan v. USAA General Indem. Co.*, 546 F.3d 321 (5th Cir. 2008) (citing to the Advisory Committee Note to the 1993 amendments to F.R.Civ. P. 4(m)). Such would be the case here. Further, although Mason asserts that the Trustee's failure to serve her was an intentional and deliberate strategic choice, there is little evidence of that at this stage. Rather, it appears that the Trustee has been careless.[11] In light of the very brief delay in service, the time bar which would exist if the Court were to dismiss the

---

[11] The Court does not, by any of its rulings, intend to condone the Trustee's multiple procedural mis-steps in this adversary proceeding.

**Memorandum Opinion** 16

Complaint, the waiver by Mason of the defense of insufficiency of service of process, and the general bias in the federal rules in favor of resolution of disputes on the merits, *see Krupski v. Costa Crociere S. p. A.*, 130 S.Ct. 2485 (2010), the Court will extend the Trustee's deadline for service by four days.

### B. The Trustee's Standing

As Mason notes, the Plan transfers to the Plan Trust all of the "Assets." Plan, Art. 6.1.2 *See Mason App.*, p. 034.[12] The term "Assets" is defined in the Plan as "[a]ll right, title and interest in and to any and all property of every kind or nature, whether tangible or intangible, owned by the Debtor or Estate as of the Effective Date, including, but not limited to, Causes of Action." *Mason App.*, p. 021. The term "Causes of Action" is, in turn, defined as "any and all causes of action, claims, rights of action, suits or proceedings, whether in law or equity, whether known or unknown, which have been or could be asserted by the Debtor, the Estate or the Trustee (in his capacity as the trustee of the Estate or on behalf of the Debtor or Estate), as of the Effective Date, including, without limitation, all of the Causes of Action referenced in Section X(C) of the Disclosure Statement." *Mason App.*, p. 022. Mason argues that since the transfer of the Lexus did not occur until 2009, the "Cause of Action" for its recovery did not exist on the effective date in 2007, and thus that "Cause of Action" was not transferred to the Plan Trust.

The Court concludes that Mason is correct, albeit for a different reason. The Court does not believe that it is the Plan's definition of the term "Causes of Action" that results in the Trustee's lack of standing. It is true that the term "Causes of Action" limits the Trustee's standing to causes of

---

[12] The citations herein to "Mason App." refer to the "Appendix to Defendant Patricia Mason's Brief in Support of her Motion for Summary Judgment Seeking Dismissal of (I) All Claims Asserted Against Her as Barred by the Applicable Statutes of Limitation or, Alternatively, (II) the Trustee's Claim Against Her Relating to the Alleged 2009 Transfer for Lack of Standing."

**Memorandum Opinion** 17

action that could have been asserted on the effective date. It is also true that the Trustee could not have asserted a section 550 claim with respect to the Lexus as of the effective date, because the transfer of the Lexus to Mason had not yet occurred. However, the Plan's definition of the term "Assets" only *includes* "Causes of Action" – it is not *limited* to "Causes of Action" as that term is defined in the Plan. The term "Assets" is broader and is clearly broad enough to encompass even a cause of action that does not fall within the more specific definition of "Causes of Action." Therefore, the term "Assets" is broad enough to include section 550 claims owned by the Debtor or estate on the effective date whether they could have been asserted on the effective date or not. So, for example, had a section 550 claim existed against a transferee, but the transferee had not yet been identified such that neither the Debtor nor the estate could have asserted it as of the effective date, that claim still passed to the Plan Trust by virtue of the broad definition of the term "Assets." However, as defined, only those "Assets" which were "owned by the Debtor or the Estate *as of the Effective Date*" were transferred to the Plan Trust. Here, for reasons similar to those argued by Mason, the Court does not believe that Heritage or its Estate owned, in 2007, a claim against Mason as a result of a transfer that occurred in 2009.

The Trustee's argument in response misses the mark, at least with respect to the section 550 claim. The Trustee argues that the term "Assets" includes the claims he asserted that resulted in the Judgment. The Court agrees – but that is not the claim he is presently asserting. The Trustee also argues that his standing derives from his status as a judgment creditor, as a result of the Judgment entered on his claims against Kornman. That is true with respect to his TUFTA claim, but it is *not* true with respect to his section 550 claim. The Trustee may only assert the section 550 claim as a representative of the estate, if asserted pre-confirmation while he was chapter 11 Trustee, or as the

representative of the Plan Trust now. His ability to assert the section 550 claim now, as the representative of the Plan Trust, derives from the Plan and the Plan Trust documents, not as a judgment creditor. And, those documents limit his ability to assert claims to only those claims that were owned by Heritage or its estate as of the effective date. While the Heritage estate may have owned some section 550 claims on the effective date, it did not own this one.

Accordingly, the Court concludes that the Trustee lacks standing to seek to recover from Mason a transfer of the Lexus that was allegedly purchased with funds that were themselves fraudulently transferred to Kornman from Heritage.

### III. CONCLUSION

For the reasons set forth in detail above, the Trustee's TUFTA claim against Mason is dismissed for lack of subject matter jurisdiction. In addition, the Court concludes that the Complaint was timely filed under 11 U.S.C. § 550(f). Mason's Motion on statute of limitations grounds is therefore denied. The Court further concludes that Mason has waived the defense of insufficiency of service of process by failing to raise it in her answer or in a pre-answer motion. Even if the defense were not waived, the Court would extend the Trustee's deadline for service by four days. Lastly, the Court concludes that the Trustee does not have standing to assert his section 550 claim with respect to the alleged transfer in 2009 of a Lexus vehicle to Mason. The Motion is therefore granted in part and Mason is entitled to judgment dismissing for lack of standing the Trustee's section 550 claim seeking recovery from Mason as to the transfer of the Lexus from Kornman to Mason in 2009.

The Trustee is directed to pay the filing fee for the commencement of this adversary proceeding within fourteen days of the date of this Memorandum Opinion, or the adversary proceeding will be dismissed. In addition, the Trustee is directed to prepare an Order, circulate it to

Mason's counsel for approval as to form, and submit it to the Court within fourteen days.

# # # END OF MEMORANDUM OPINION # # #